No. 50,862

STATE OF KANSAS, *Appellee,* v. WILLIAM N. LOVELACE, *Appellant.*

(607 P.2d 49)

Opinion filed March 1, 1980.

*James A. Walker,* of Martin, Pringle, Fair, Davis & Oliver, of Wichita, argued the cause and was on the brief for the appellant.

*Beverly Dempsey,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *James D. Turner,* assistant district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: William N. Lovelace appeals from judgment and sentences imposed after a jury trial in Sedgwick County, Kansas. He was convicted of aggravated sodomy (K.S.A. 21-3506) and of taking indecent liberties with a child (K.S.A. 1979 Supp. 21-3503).

Lovelace is a fifty-year-old man. The victim, a fourteen-year-old boy, and his family had been acquainted with Lovelace for seven or eight years. The boy and Lovelace had been together for various activities such as bowling and movies at least fifty times during the period of their acquaintance. Appellant has an eighteen-year-old son, Mike, who was staying at the Boys' Industrial School in Topeka. He had been involved in a burglary. Appellant made arrangements to pick up his son for a home visit. He also made arrangements with the parents of the victim to have him accompany appellant to Topeka on a Friday. On Saturday the victim was going to caddy for appellant in a golf tournament. Friday morning the appellant and John, the victim, had breakfast at a restaurant. On the way to the turnpike entrance appellant called John's attention to some Boy's Life magazines in the car. John told appellant that he was not a kid anymore and that he wanted some good stuff to read like the magazines in appellant's house. They turned the car around and returned to the house where John picked up magazines such as Playboy, Honcho, Blueboy, Hustler and Cherry. They then proceeded on their way to Topeka. At some point on the way to Topeka John said to appellant, "My penis gets hard when I look at this stuff." John testified that appellant responded, "John, why don't you remove your pants so I can feel your penis." John removed his pants and appellant rubbed John's penis for approximately five minutes.

This occurred three different times before they arrived at Topeka. These three incidents form the basis for the charge of taking indecent liberties with a child.

While in Topeka appellant stopped at a drugstore and bought John new issues of Hustler and Blueboy magazines. They picked up appellant's son, Mike, and returned to Wichita. In Wichita the three went to a neighborhood picnic where John obtained permission from his parents to stay at Mike's house that night, so he would be ready to caddy for appellant the next day. John, Mike and appellant returned to appellant's house after seeing a movie.

According to John's testimony appellant asked John to sleep with him instead of sleeping in the living room. John refused and appellant went to bed. After Mike had gone to bed in his own room, John turned off the light and went to bed on the sofa in the living room. A few minutes later appellant entered the living room. He was naked. He knelt down beside the sofa and began rubbing John's penis. He then began sucking on John's penis. This continued for approximately fifteen minutes. John said he was shocked by appellant's actions and couldn't talk. Appellant returned to his bedroom. John slept until 5:00 o'clock a.m., then left appellant's residence and walked home, a distance of four or five blocks. John told his father about the events and the police were called about 10:30 that morning.

At the trial which followed, the prosecutor presented the testimony of John and his father. The appellant presented one witness, Mike Lovelace, who testified that he was in and out of the area of the living room after he had retired and that his father did not engage in any sexual activity with John. Mike testified he didn't see, hear or sense any such activity in the house that evening.

On rebuttal the prosecution asked Mike what his father said the next day when he saw the police coming up the walk toward his house. Mike heard his father say, "Oh my God, oh my God, they have come for me. I know they're coming for me."

The first claim of error is based on failure of the trial court to sustain appellant's motion for judgment of acquittal on the charge of aggravated sodomy. Appellant claims there was no evidence of actual penetration as required by law. See *State v. Yates*, 220 Kan. 635, 638, 556 P.2d 176 (1976). Sodomy includes oral copulation between persons who are not husband and wife, and any pene-

tration, however slight, is sufficient to complete the crime of sodomy. K.S.A. 21-3505. The act of sodomy is aggravated when it is performed on a child under the age of sixteen (16) years. K.S.A. 21-3506(*b*). Evidence that showed the victim's male organ penetrated beyond the lips of the defendant was a sufficient showing of penetration to complete the crime of sodomy. *State v. Williams,* 224 Kan. 468, Syl. ¶ 2, 580 P.2d 1341 (1978).

John testified that the appellant "stuck his mouth in my penis—on my penis." That testimony when believed by the jury was sufficient to establish sufficient penetration to complete the crime of sodomy.

The second issue raised concerns venue on the charge of indecent liberties with a child. The crime was committed while both parties were in transit. The trip began in Sedgwick County. The parties proceeded to Topeka and then returned to Wichita. The parties traveled in at least six counties. The crime occurred in a vehicle and it cannot be determined in which county the crime was committed.

Normally, venue and the place of trial is in the county where the crime was committed. K.S.A. 22-2602. If a crime is committed in any vehicle passing through the state, and it cannot readily be determined in which county the crime was committed, the prosecution may be in any county in this state through which such vehicle has passed or in which such travel commenced or terminated. K.S.A. 22-2608. The case was properly tried in Sedgwick County.

The appellant contends that the information was defective for it failed to allege the crime was committed while in transit. Venue is generally a matter of proof and depends upon the facts and circumstances of each case. It was alleged the crime was committed in Sedgwick County. The trial court properly instructed the jury:

"If any alleged crime is committed in any vehicle passing through this state, and it cannot readily be determined in which county the alleged crime was committed, the prosecution may be in any county in this state through which such vehicle has passed or in which such travel commenced or terminated."

We hold that the procedure followed in this case, *i.e.,* merely alleging venue in Sedgwick County where the vehicular trip commenced, and then instructing the jury concerning venue for crimes committed in transit, as set out in K.S.A. 22-2608, was

entirely proper. See 41 Am. Jur. 2d, Indictments and Informations § 126, p. 960.

The third issue raised on appeal concerns the admissibility of testimony as to the general nature of the contents of the magazines. John was permitted to describe in a general way what was in these magazines. He testified, "Well, just like Honcho and Blueboy, two men having sex." In response to a question as to what was in Playboy and Hustler, John testified, "Just man on a woman and just women showing off with all their clothes off."

Appellant contends that this testimony violates the best evidence rule, K.S.A. 60-467. Magazines are writings within the definition contained in K.S.A. 60-401(*m*). The testimony was admitted to prove the general contents of these publications. However, in the statute, K.S.A. 60-467, the best evidence rule is subject to six specific exceptions. Under the fourth exception the best evidence rule does not apply where the writing is not closely related to the controlling issues and it would be inexpedient to require the production of the writing. This exception was applied by this court in *State v. Thompson,* 221 Kan. 176, 180-181, 558 P.2d 93 (1976). The exception applies in the present case. The magazines were in no way closely related to controlling issues in the case. There was no dispute as to the contents. Production was unnecessary and in some ways might have been prejudicial to the appellant.

It should be remembered that the best evidence rule is not an inflexible rule of exclusion, but rather a preferential rule. *State v. Goodwin,* 223 Kan. 257, 259, 573 P.2d 999 (1977). Under the circumstances of the present case there was no error in the admission of the testimony.

In the fourth issue raised appellant complains of certain comments made by the trial judge to appellant in the presence of the jury. The trial judge instructed the appellant to be quiet. Apparently appellant was conversing with his attorney in a voice which could be heard by others present in the courtroom.

Canon 3 A (2) of the Code of Judicial Conduct in Kansas places a duty on each judge to "maintain order and decorum in proceedings before him." K.S.A. 20-175. From the record before this court it appears the trial judge acted properly in carrying out this duty by admonishing appellant to keep his voice down or remain silent.

In his fifth point of error appellant contends the trial court erred in overruling his objection to the admission of certain testimony as rebuttal evidence. During the trial the victim testified that while the second criminal episode was occurring, appellant's son, Mike, went to a shelf near appellant's bedroom to secure a towel and wash cloth. The defense, as its sole evidence, subsequently called Mike as a witness. Mike testified that he had made two trips to the linen closet that night, once to get a blanket for the victim and a second time to get a towel for himself. During this second trip, because he had made some noise, he looked and saw the victim was still on the couch and appellant was still in his bedroom. He further testified that he was awake until 2:00 a.m. and saw and heard nothing that would indicate sexual activity going on between appellant and the victim.

On cross-examination the State sought to elicit testimony from Mike of an alleged inculpatory statement made by appellant when the police officers approached the house to arrest him the next day. The proffered testimony was to the effect that when appellant saw the police he stated something like, "Oh my God, oh my God, they have come for me. I know they're coming for me." Appellant objected that this was improper cross-examination, and the court at this time sustained the objection.

After the appellant had rested his case the court allowed the State to recall Mike as a rebuttal witness, and to elicit this same testimony from him. Appellant objected that this was not proper rebuttal.

This court has had occasion to consider the rules relating to rebuttal evidence in several recent cases. See *State v. Chiles,* 226 Kan. 140, 146, 595 P.2d 1130 (1979); *State v. Stuart and Jones,* 223 Kan. 600, 604, 575 P.2d 559 (1978). The rules are summarized as follows in *State v. Shultz,* 225 Kan. 135, 138, 587 P.2d 901 (1978):

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. 'It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice.' *State v. Phipps,* 224 Kan. 158, 161, 578 P.2d 709 (1978)."

Under the broad rule endorsed in these cases the testimony in question was properly received as rebuttal evidence.

In his sixth point of error appellant contends that instruction number five relating to the presumption of innocence and reasonable doubt was erroneous. Appellant further contends the instruction is erroneous in stating, "If you have no reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant guilty as charged." Appellant maintains that this wrongly advises the jury they must find defendant guilty if they have no reasonable doubt as to the truth of the State's claims, instead of advising if they have no reasonable doubt as to his guilt. He also objects to the fact the instruction speaks in terms of a mandatory adjudication of guilt while K.S.A. 21-3109 only speaks in terms of a mandatory adjudication of acquittal in cases of reasonable doubt.

The instruction in question here was basically taken from PIK Crim. 52.02. The PIK Criminal Instruction 52.02 has been approved consistently by this court. See *State v. Trujillo,* 225 Kan. 320, 322, 590 P.2d 1027 (1979); *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728 (1974); *State v. Taylor,* 212 Kan. 780, 784, 512 P.2d 449 (1973).

Another difference between the instruction given in this case and PIK Criminal 52.02 is that this instruction uses the word *must* instead of *should,* as is used in PIK, to describe the jury's duty. As to this, our decision in *State v. Stuart and Jones,* 223 Kan. at 603-604, indicates our belief that the two words can be used interchangeably in criminal instructions. Both convey a sense of duty and obligation. We find no substantial difference in the two and what differences there may be could very well be in appellant's favor.

Appellant's seventh and final point is that the trial court abused its discretion in imposing the sentences. He complains of the severity of the sentences and of the failure to obtain a presentence report. The sentences were made to run concurrently, not consecutively. Appellant had been convicted of two prior sex crimes. The last occurred only seven months previously.

A sentence fixed by the trial court will not be set aside on appeal if it is within the statutory limits unless it is so arbitrary and unreasonable that it constitutes an abuse of judicial discretion. *State v. Coe,* 223 Kan. 153, Syl. ¶ 8, 574 P.2d 929 (1977). The

longest of the two concurrent sentences was 45 years to life. All factors considered we cannot say there was an abuse of judicial discretion in this regard.

Appellant complains because the trial court failed to request and receive a more recent presentence report. K.S.A. 1979 Supp. 21-4604(1) provides in part:

"Whenever a defendant is convicted of a felony, the court shall require that a presentence investigation be conducted by a probation officer or in accordance with K.S.A. 1978 Supp. 21-4603, unless the court finds that adequate and current information is available in a previous presentence investigation report or from other sources."

The above law became effective January 1, 1979. Appellant was sentenced February 6, 1979. It appears from the record that appellant had been found guilty of a sex crime seven months earlier. At that time a presentence report had been filed. The exception in the mandatory presentence report statute was effective at the time of the sentencing and the court was not required to obtain a second report under such circumstances. Fairly current information was available in the previous report and no error occurred.

Judgment affirmed.