No. 112,780

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH SHANE ALLEN,
*Appellant*.

SYLLABUS BY THE COURT

1.

To prove possession, the State must demonstrate that the defendant either: (1) exercised joint or exclusive control over the substance or item with knowledge of and intent to have such control, or (2) knowingly kept the substance or item in a place where he or she has some measure of access and right of control. K.S.A. 2015 Supp. 21-5701(q).

2.

A person "acts 'knowingly,' or 'with knowledge,' with respect to . . . circumstances surrounding such person's conduct when such person is aware . . . that the circumstances exist." K.S.A. 2015 Supp. 21-5202(i).

3.

A guilty finding for possession of a controlled substance may be supported by evidence that the controlled substance was on an item in the defendant's possession and the controlled substance was clearly visible on the item to the naked eye.

1

4.

Criminal defendants are not entitled to have the jury instructed on its inherent power of nullification—that is, the power to disregard the rules of law and evidence in order to acquit the defendant based upon the jurors' sympathies, notions of right and wrong, or a desire to send a message on some social issue.

5.

Unlike the words "must," "shall," and "will," the word "should" does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path. Accordingly, the reasonable doubt instruction contained at PIK Crim. 4th 51.010, which states that if the jury has no reasonable doubt as to the truth of each the claims asserted by the State it "should find the defendant guilty," does not usurp the jury's inherent power of nullification.

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed May 6, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Russell W. Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., GREEN and LEBEN, JJ.

ARNOLD-BURGER, J.:  A Kansas State Trooper stopped Joseph Shane Allen for driving without a seatbelt. Allen showed several signs of impairment, so the trooper asked him to exit the vehicle for sobriety tests. When the trooper patted Allen down before testing, however, Allen ran from the scene. During a search of Allen's vehicle, the trooper discovered evidence of drug possession and use, including methamphetamine

residue on a scale and inside a pipe. A jury convicted Allen of several offenses, including possession of methamphetamine.

FACTUAL AND PROCEDURAL BACKGROUND

Kansas State Trooper James Parr noticed that the driver of a Chevy Avalanche was not wearing his seatbelt. After stopping the vehicle, Parr ran the license plate and discovered that the vehicle belonged to Allen. When Parr contacted Allen, he noticed several indicators of intoxication, including bloodshot eyes, a strong odor of alcohol, and an open beer bottle in the center console. Allen also appeared uncoordinated, and his hands trembled. For those reasons, Parr requested that Allen step out of the car for sobriety tests.

When Allen exited the truck, Parr asked him how much he had to drink that night, and Allen admitted to drinking the open beer that was sitting in the center console. Although Allen complied when Parr asked permission to pat him down for weapons, he "took off running" when Parr touched a hard object in his front right pocket. Parr radioed for assistance but otherwise stayed with the vehicles. After speaking to Allen's passenger briefly, Parr started searching Allen's vehicle both for evidence of more alcohol and to inventory the contents prior to towing. Inside, Parr discovered a number of items, including: (1) a homemade "sand club" in the driver's side door, (2) a scale with "a white powdery residue on it" in the center console, (3) a leafy green substance on the floorboards, (4) a second scale (this one without residue) in a lunch box in the truck bed, and (5) a "crack pipe" with a "white powdery residue" in the same lunch box. Testing at the KBI revealed the white powders on the scale and inside the pipe to be methamphetamine. The scale residue also contained THC. The green leafy substance from the floor was marijuana.

3

The State charged Allen with nine separate offenses, including possession of methamphetamine. On one of these charges, the district court granted a directed verdict of acquittal. Another was dismissed at some point during the trial.

At trial, Parr and a Kansas Bureau of Investigation (KBI) technician each testified to the above information. Parr acknowledged that the residue on the scale was not enough to secure in a baggie, but he noted that there was "enough powder to see." The KBI technician also remembered seeing the residue on the scale and inside the pipe.

The jury convicted Allen of six of the seven remaining charges, acquitting him of criminal use of a weapon. The district court sentenced Allen to 20 months' imprisonment for the possession of methamphetamine conviction with all other sentences running concurrently. Allen timely appealed.

ANALYSIS

*There was sufficient evidence to support Allen's conviction for the possession of methamphetamine.*

On appeal, Allen first challenges the conviction for possession of methamphetamine, arguing that the State failed to prove that he knew he possessed the drug. As always, when the sufficiency of the evidence is challenged in a criminal case, this court reviews such claims by looking at all the evidence in the light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In determining whether there is sufficient evidence to support the conviction, this court generally will not reweigh evidence or evaluate the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). Importantly, a verdict may be supported by circumstantial evidence if that evidence provides a basis from

4

which the factfinder may reasonably infer the existence of the fact in issue. However, the evidence need not exclude every other reasonable conclusion or inference. *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008).

Possession of a controlled substance occurs when an individual possesses "any opiates, opium or narcotic drugs," as well as certain stimulants or analogs of those substances. K.S.A. 2015 Supp. 21-5706(a). To prove possession, the State must demonstrate that the defendant either: (1) exercised "joint or exclusive control over [the substance] with knowledge of and intent to have such control," or (2) knowingly kept the substance "in a place where [he or she] has some measure of access and right of control." K.S.A. 2015 Supp. 21-5701(q). The crux of Allen's argument is simple: because Parr discovered only a small amount of methamphetamine residue on the scale, the residue constituted an oversight on his part and not something he knowingly possessed. And since the State never demonstrated that Allen knew about the residue, it failed to prove possession.

Our Kansas statutes provide that someone "acts 'knowingly,' or 'with knowledge,' with respect to . . . circumstances surrounding such person's conduct when such person is aware . . . that the circumstances exist." K.S.A. 2015 Supp. 21-5202(i). To put it another way, knowledge requires an awareness of the circumstances at issue. K.S.A. 2015 Supp. 21-5202(i).

Both Parr and the KBI technician who tested the residue, Alyssa Teichen, testified that they saw the residue on the scale. In fact, Parr testified to the residue's white color. He also differentiated this scale from the second one discovered in the lunch box, noting that the second scale lacked any "powder or residue." Teichen, on the other hand, could not recall the color of the residue and failed to note any color details in her report. However, she repeatedly testified that she saw it with the naked eye.

5

The same is true for the pipe collected from the lunch box: both Parr and Teichen plainly saw the residue. This time, enough residue was present that each could testify about its color; Parr described it as a "white powdery" substance, while Teichen classified it as white and blue.

On appeal, Allen essentially admits that methamphetamine likely touched the scale at some point but claims that he knew nothing of the residue that remained. But the testimony at trial clearly demonstrates that the residue was visible to the naked eye on the scale and, that similar, visible residue existed in the pipe from the lunch box. And as the items bearing the residue were found in Allen's vehicle, ample circumstantial evidence supports the conclusion that Allen knew about and controlled the methamphetamine residue in question. When viewing the facts in the light most favorable to the State, they support finding Allen guilty for possession.

*The burden of proof instruction was not clearly erroneous.*

On appeal, Allen argues that the district court erred when instructing the jury on the burden of proof, as the instruction precluded the possibility of jury nullification. The portion of the instruction at issue provides:

> "If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.)

Importantly, Allen failed to object to this instruction at trial. A party cannot claim instructional error unless he or she either objects to the error or the error is determined to be clearly erroneous. K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). When determining whether an instruction is clearly erroneous, this

6

court engages in a two-step analysis. First, the court considers whether any error occurred, which requires employing an unlimited review of the entire record to determine whether the instruction was legally and factually appropriate. Second, if the court finds error, it must assess whether it is firmly convinced that the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014); see *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012) (whether a given instruction was legally appropriate is subject to unlimited appellate review). Allen rests his argument on the fact that the instruction given was not legally appropriate because it precluded the possibility of jury nullification.

The instruction given in this case mirrored the Pattern Instructions for Kansas (PIK) Crim. 4th 51.010. Although the use of PIK instructions is not required, it is strongly recommended, as those instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. "Absent a particular need under the facts of a case to alter . . . PIK instructions, they should be followed." *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013), *rev. denied* 300 Kan. 1104 (2014). So we must determine whether the PIK instruction is legally inappropriate.

It is undisputed that criminal defendants are not entitled to have the jury instructed on its inherent power of nullification—the power to disregard the rules of law and evidence in order to acquit the defendant based upon the jurors' sympathies, notions of right and wrong, or a desire to send a message on some social issue. Our Supreme Court has clearly stated:

> "The administration of justice cannot be left to community standards or community conscience but must depend upon the protections afforded by the rule of law. *The jury must be directed to apply the rules of law to the evidence* even though it must do so in the face of public outcry and indignation. Disregard for the principles of established law

7

creates anarchy and destroys the very protections which the law affords an accused. Finally, to permit a jury to disregard the principles of law laid down by a trial court is contrary to the statutory law of this state. [Citation omitted.]

. . . .

"Although it must be conceded that the jurors in a criminal case have the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant, *it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon.*" (Emphasis added.) *State v. McClanahan*, 212 Kan. 208, 216-17, 510 P.2d 153 (1973).

The Supreme Court reiterated this same stance in *State v. Naputi*, 293 Kan. 55, 260 P.3d 86 (2011), where it found that juries should not be instructed on nullification because "[i]t is not the role of the jury to rewrite clearly intended legislation, nor is it the role of the courts to instruct the jury that it may ignore the rule of law, no matter how draconian it might be." 293 Kan. at 66.

But our Supreme Court has found error when a jury was instructed that "'[i]f you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.' (Emphasis added.)" *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014). The Supreme Court found that "[a]lthough we have rejected a defense argument that a criminal jury should be instructed on its inherent power of nullification, [citation omitted], the district judge's instruction in this case went too far in the other direction. It essentially forbade the jury from exercising its power of nullification. [Citation omitted.]" 301 Kan. at 164. The Supreme Court determined that the word *will* used in the first-degree murder instruction essentially directed a verdict for the State, and a judge "cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164. So the issue presented by Allen is whether the term "should" as used in

8

the reasonable doubt instruction has the effect of directing a verdict for the State on all the charged crimes. We find it does not.

Recently, this court has rejected the same argument that Allen makes here in several unpublished opinions. See *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016) (unpublished opinion); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5 (Kan. App. 2016) (unpublished opinion); *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* February 26, 2016; *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. ___ (February 18, 2016). There, as here, the district court instructed the jury using PIK Crim. 4th 51.010, which the defendants argued eliminated the possibility of jury nullification. And there, like in this case, the defendants insisted that the word *should* compelled the jury to convict, contravening other cases that disapproved of imperatives like *must* or *will*. We have consistently found that the instruction at issue here "does not upset the balance between encouraging jury nullification and forbidding it. . . . [U]nlike the words must, shall, and will, the word should does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path." *Hastings*, 2016 WL 852857, at *4.

We believe our colleagues in *Singleton* said it best:

"But as every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. . . . Should as used in this instruction is not the equivalent of 'must' or 'will' used in the instructions discussed in [other cases]. *Should* is advisory. It is not an imperative. The district court did not err in giving this instruction." 2016 WL 368083, at *6.

Allen presents no compelling argument as to why a different result is warranted in this case. We find that the instruction used here, PIK Crim. 4th 51.010, does not direct a

9

verdict for the State. Accordingly, it is legally sufficient, and it was not clearly erroneous for the district court to use it here.

Affirmed.