NOT DESIGNATED FOR PUBLICATION

No. 116,539

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HANNAH S. ROONEY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Coffey District Court; PHILLIP M. FROMME, judge. Opinion filed September 8, 2017. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Christopher Phelan*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.


PER CURIAM:  Hannah S. Rooney appeals her conviction for possession of methamphetamine. She argues that prosecutorial error denied her a fair trial. While the prosecutor did err by misstating the burden of proof during closing argument, the error was harmless in light of the multitude of statements of the law, the jury instructions, and the innocuous nature of the prosecutor's statement. Rooney also challenges the sufficiency of the evidence. But when looking at the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to support the jury's findings. Rooney knew that she possessed a baggie that said "stay high" on it, she knew there was a substance in the baggie, and, while she argued that the substance was her daughter's

1

medication, testing revealed that the substance was methamphetamine. Accordingly, Rooney's conviction is affirmed.

FACTUAL AND PROCEDURAL HISTORY

Deputy Garen Honn conducted a traffic stop on Rooney's vehicle after observing that she had a loud exhaust and no muffler. Rooney could not provide proof of insurance for the vehicle. Deputy Honn arrested Rooney for failure to provide proof of insurance and searched her person. Deputy Honn found a small clear bag with "a white powdery substance inside of it." The words "stay high" were imprinted on the baggie. Based on his training and experience, Deputy Honn believed that the substance was methamphetamine. Rooney told Deputy Honn that she used the bag to store her daughter's diabetes medication. Deputy Honn collected the bag as evidence and sent it to the Kansas Bureau of Investigation (KBI) for testing. The KBI tests revealed that the substance in the bag was methamphetamine.

The State charged Rooney with possession of methamphetamine, possession of drug paraphernalia, and failure to provide proof of insurance. A jury found her guilty of all three crimes. The court ordered Rooney to serve 18 months on probation during which she would attend drug treatment with an underlying prison sentence of 15 months.

ANALYSIS

*Prosecutorial error did not deprive Rooney of her right to a fair trial.*

Rooney's first argument is that prosecutorial error deprived her of her right to a fair trial and requires this court to reverse her convictions. During closing arguments, the prosecutor told the jury: "Beyond all doubt is not a standard. And beyond a shadow of a doubt is not a standard. It's reasonable. So if there's doubt and it's reasonable, there can

2

still be a conviction." The State concedes that the prosecutor erred by misstating the law. However, the State argues that this error did not prejudice Rooney's right to a fair trial.

Appellate courts employ a two-part test to evaluate claims of prosecutorial error, "simply described as error and prejudice." *State v. Sherman*, 305 Kan. 88, Syl. ¶ 6, 378 P.3d 1060 (2016). The court first determines whether the prosecutor's comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Then, if there was error, the court employs the constitutional harmless error test to determine whether the error prejudiced the defendant's due process rights to a fair trial. 305 Kan. at 109. Both parties agree that the prosecutor's statement was outside the wide latitude that prosecutors are allowed. So, this court must employ the constitutional harmless error test to determine if Rooney's rights were prejudiced.

When an error infringes upon a party's federal constitutional right, a court will declare a constitutional error harmless only where the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 3d 705, *reh. denied* 386 U.S. 987 [1967]).

The State argues that the error did not affect the outcome of the trial because "[d]uring the trial the correct burden of proof was presented to the jury numerous times throughout the trial by the prosecutor, the defense attorney, and Judge Fromme." The State notes that the correct burden of proof was given to the jury during voir dire, opening statements by both parties, the court's jury instructions, and by both parties during closing arguments. The State also cites the weight of the evidence as a factor that would reduce the effect of the error. The State supports its argument with *State v.*

*Huddleston*, 298 Kan. 941, 318 P.3d 140 (2014). *Huddleston* was decided before *Sherman* established a new framework for analyzing prosecutorial error, but both analyses require a court to determine whether a prosecutor's error or misconduct prejudiced a defendant's right to a fair trial. *State v. Tosh*, 278 Kan. 83, 93, 91 P.3d 1204 (2004), *overruled by Sherman* 305 Kan. 88.

In *Huddleston*, Sharon Huddleston was convicted of premeditated, first-degree murder. She argued "that the prosecution committed misconduct during closing argument by misstating the law regarding premeditation and thereby depriving her of a fair trial." 298 Kan. at 946. The Kansas Supreme Court agreed that the prosecutors committed misconduct by telling the jury that premeditation could occur after the act that causes the death. 298 Kan. at 953. The court thought that the prosecutors' misconduct was gross and flagrant because the prosecutors' statements "were repeated, emphasized improper points, and violated well-established law regarding the law of premeditation." 298 Kan. at 954. However, the court concluded that the prosecutors' statements were not motivated by ill will because "[w]hile the prosecutors' statements were repeated, they were not in apparent indifference to a ruling of the trial judge." 298 Kan. at 954. The court was also "hesitant to characterize a misstatement as being the product of ill will where, as in this case, a prosecutor makes both a misstatement of the law and a correct recitation of the applicable law in a closing argument." 298 Kan. at 955. The *Huddleston* prosecutors had "correctly defined premeditation several times during closing argument." 298 Kan. at 955. Ultimately, the court held that the prosecutors' misstatements were harmless. This holding was supported by several facts: (1) the jury was given a proper instruction on premeditation; (2) the district court instructed the jury to follow the instructions; (3) the prosecutors' statements were brief, and only a small part of the prosecution's closing argument; (4) the prosecutors correctly defined the law on premeditation during other parts of closing argument; and (5) overwhelming evidence supported Huddleston's conviction. 298 Kan. at 956-57.

4

Here, the prosecutor's statement was also erroneous. And like in *Huddleston*, any prejudice flowing from this error was minimized by the fact that the prosecutor correctly defined the law in other parts of the closing argument. Moreover, the jury was given the proper instruction on the law of reasonable doubt. But unlike the repeated misstatements of the law in *Huddleston*, the prosecutor here only misstated the law one time. Given the brevity of the prosecutor's misstatement and the number of correct statements of the law, we find that there is no reasonable possibility that the error contributed to the verdict.

*There was sufficient evidence to sustain Rooney's conviction for possession of methamphetamine.*

Rooney's second argument is that there is insufficient evidence to support her conviction for possession of methamphetamine because the State failed to prove that she had knowledge of the substance in the baggie.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

Rooney made the same argument in her motion for judgment notwithstanding the verdict. The State replied to this motion and argued that "[w]hile [Rooney] never directly acknowledged the substance was methamphetamine, circumstantial evidence clearly points to her knowledge." The State explained:

> "It is a rational inference that a person has knowledge of the items located in the
> clothing he or she is wearing. It is a rational inference that a drug dealer may keep drugs
> in a baggie. It is a rational inference that someone who has a drug dealer friend may have

5

knowledge of drugs. It is a rational inference that the saying, 'stay high', is a reference to being under the influence of illegal drugs and that items in the 'stay high' baggie may be related to illegal drugs. It is also rational that a juror would find incredible that a person would keep important medication for a serious disease, diabetes, for their child in a baggie such as the one described and admitted into evidence."

The district court denied the motion, adopting the reasoning in the State's response. The court added that "a jury could reasonably find the defendant lied to the officer about using the baggie for her daughter's pills since the crumbs were methamphetamine, not Metformin."

The district court's reasoning is sound. "A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deductible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." *State v. Rosa*, 304 Kan. 429, Syl. ¶ 2, 371 P.3d 915 (2016). There was ample evidence here for the jury to make a reasonable inference that Rooney knew that methamphetamine residue was in the bag. The bag containing the methamphetamine said "stay high," and Rooney admitted that she got the bag from a drug dealer friend. This shows that Rooney was not a stranger to illicit substances. Rooney said that the powder was her daughter's diabetes medication, but as the district court noted the substance tested as methamphetamine, not Metformin.

In *State v. Allen*, 52 Kan. App. 2d 729, 372 P.3d 432 (2016), *rev. denied* 306 Kan. ___ (April 17, 2017), Joseph Allen was convicted of possession of methamphetamine. A police officer who conducted a traffic stop on Allen found "a scale with 'a white powdery residue on it' in the center console" of Allen's truck. 52 Kan. App. 2d at 730. The KBI tested the powder and concluded it was methamphetamine. Allen appealed his conviction, "arguing that the State failed to prove that he knew he possessed the drug." 52 Kan. App. 2d at 731. Allen argued that because the police officer "discovered only a small amount of methamphetamine residue on the scale, the residue constituted an

6

oversight on his part and not something he knowingly possessed." 52 Kan. App. 2d at 732. The court rejected this argument, noting that trial testimony clearly demonstrated that the residue was visible to the naked eye. The court held that because the scale was found in Allen's vehicle, "ample circumstantial evidence support[ed] the conclusion that Allen knew about and controlled the methamphetamine residue in question." 52 Kan. App. 2d at 733; see also *State v. Chong Her*, No. 112,815, 2016 WL 3365755, at \*2 (Kan. App. 2016) (unpublished opinion) (holding that the mere presence of methamphetamine in the defendant's pants pocket was sufficient evidence of his knowledge and intent to possess the drug and that the jury could have reasonably inferred guilt beyond a reasonable doubt), *petition for rev. filed* July 18, 2016. The same is true here—Rooney knew she possessed the bag, and she knew that there was a substance in it. She told police that the substance was her daughter's medication, but KBI testing revealed that this was not true. Because Rooney's explanation of the substance was shown to be false, it was reasonable for the jury to infer that Rooney knew the substance was methamphetamine.

There is sufficient evidence, when viewed in the light most favorable to the State, to support Rooney's conviction for possession of methamphetamine.

Affirmed.