NOT DESIGNATED FOR PUBLICATION

No. 121,076

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PRINCESS JEWEL ANTHONY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed August 21, 2020. Affirmed in part and reversed in part.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM:  A jury convicted Princess Jewel Anthony of possession of methamphetamine, marijuana, and drug paraphernalia; driving with a defective brake light; and transporting an open container. Anthony appeals her convictions, arguing the district court erred by allowing evidence of her prior drug use, by denying her motion to suppress, and by improperly instructing the jury about the brake light violation. Anthony also asserts that insufficient evidence supports her convictions for possession of methamphetamine and driving with a defective brake light. We agree that Anthony's brake light conviction is not supported by sufficient evidence, so we reverse that conviction but affirm all others.

1

*Factual and Procedural Background*

At around 11 p.m. on March 26, 2017, Detective Brad Hanika witnessed a car weaving within its lane, traveling between 35 to 50 miles per hour (mph) in a 70 mph zone. He followed the car and noticed that the driver's side brake light was defective so Hanika pulled the car over.

When Hanika approached the car, he smelled burned marijuana. Hanika told Anthony, the driver and owner of the car, that he would search the car due to the smell. At that point, Anthony yelled at the passenger to "give [her] the weed."

Hanika and another officer searched the car and found a purse on the driver's side floorboard of the car. In the purse, officers found a pipe with methamphetamine residue inside it and a jar that contained what Anthony admitted was alcohol. The officers found marijuana and more drug paraphernalia elsewhere in the car.

Anthony was charged and tried for possession of methamphetamine, marijuana, and drug paraphernalia; driving with a defective brake light; and transporting an open container. At trial, Anthony focused her defense on the methamphetamine charge. Anthony's counsel conceded that Anthony possessed the marijuana and the open container of alcohol and did not mention the brake light infraction.

The jury convicted Anthony as charged. The district court sentenced Anthony to 12 months of probation with an underlying 28-month prison term.

Anthony timely appeals.

*Did the District Court Err in Allowing Evidence of Prior Drug Use?*

Anthony first argues that the district court committed reversible error by permitting the State to introduce evidence of her past drug use. She asserts that this error also violated her constitutional right to a fair trial because there the judge never considered the admissibility of the evidence and the jury considered the evidence with no limiting instruction.

*Anthony's Claim Is Not Preserved for Appellate Review.*

First, we must address the State's contention that Anthony failed to preserve this issue for appellate review. Whether an issue has been properly preserved for appeal is a question of law that we review de novo. *State v. Haberlein*, 296 Kan. 195, 203, 290 P.3d 640 (2012). Generally, to preserve an evidentiary issue for appellate review, a party must lodge a timely and specific objection at trial. K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

Our Supreme Court has emphasized that "the legislature's intent in enacting K.S.A. 60-404 is clear:  a party must lodge a timely and specific objection to the admission or exclusion of evidence in order to preserve the evidentiary question for review." *State v. King*, 288 Kan. 333, 348, 204 P.3d 585 (2009). A contemporaneous objection gives the district court the opportunity to reevaluate its relevance and potential for prejudice in light of the evidence to be presented to the jury. The contemporaneous objection rule found in K.S.A. 60-404 allows a district court to act as a gatekeeper of the evidence admitted at trial and allows the court to consider evidentiary issues, thus reducing the chances of reversible error. See *King*, 288 Kan. at 342.

Anthony references three exchanges to show that she met the contemporaneous objection rule and that the district court erroneously admitted the prior drug use evidence:

"[DEFENSE COUNSEL]: What did [Anthony] say when you asked her about methamphetamine in the car?

"[HANIKA]: She didn't say anything. In fact, she did not claim ownership of the pipe, and I asked her when the last time was that she had used methamphetamine.

"[DEFENSE COUNSEL]: Judge, that's going a little bit beyond what question I asked.

"THE COURT: Officer, just answer Mr. Delaney's question, if you will.

. . . .

"[DEFENSE COUNSEL]: Just in reference, did you—Exhibit 4, which [is] the glass pipe?

"[HANIKA]: Yes, sir.

"[DEFENSE COUNSEL]: Did you ever show that [to] Ms. Anthony?

"[HANIKA]: I don't recall if I showed it to her. Let me check my report, here. What I have in my narrative is that while she was—Ms. Anthony was sitting in the Tribal Police car, I asked her if she knew anything about the glass pipe. She did not claim ownership, and then I asked her about her use of cocaine or methamphetamines, and that she told me that she hadn't done those in a while.

"[DEFENSE COUNSEL]: Once again, that's outside the boundary, and officer's been warned.

"THE COURT: Officer, just answer his question. It's possible Ms. Miller may ask about that or not.

. . . .

"[PROSECUTOR]: And let's go back to this glass pipe for just a second. You indicated that you had asked Ms. Anthony about it at the jail, and she denied ownership. Is that accurate—or did she claim ownership which—

"[HANIKA]: She did not claim ownership of it.

"[PROSECUTOR]: And then you had some questions for her about her use of either cocaine or methamphetamine; is that accurate?

"[HANIKA]: That's true.

4

"[PROSECUTOR]: And she responded she hadn't done it in a while, but she wouldn't tell you—

"[DEFENSE COUNSEL]: Judge, I don't know if that's relevant to this situation. We're talking about one specific day and what Ms. Anthony did any time prior to that day is simply not relevant to the matter.

"THE COURT: So you object to—

"[DEFENSE COUNSEL]: I would object to any testimony regarding anything that didn't happen on this particular day.

"THE COURT: Objection's overruled.

"[PROSECUTOR]: Did she tell you how long it had been since she'd consumed either of those substances?

"[HANIKA]: I asked her specifically about cocaine and methamphetamine use. And she told me that it had been a while since she had used either of those.

"[PROSECUTOR]: Did she give you specific time frame of what a while was?

"[HANIKA]: No, she did not.

"[PROSECUTOR]: Did she agree to take any sort of testing for you?

"[HANIKA]: No, I asked her if she would submit to a urinalysis test to see if she was positive for either of those chemicals, and she refused to take that test."

These colloquies show that defense counsel objected to Hanika's testimony about Anthony's prior drug use as irrelevant and outside the scope of her questions on cross-examination. The defense counsel's objections were timely—her objection provided the district court an opportunity to make its ruling contemporaneous with the State's attempt to introduce the evidence. See *State v. Ballou*, 310 Kan. 591, 614, 448 P.3d 479 (2019).

But defense counsel's objections were not "specific" in the way Kansas law requires. To lodge a specific objection, the party's objection must be "so stated as to make clear the specific ground of objection." K.S.A. 60-404. And when a party specifies one grounds for an objection at trial, it cannot then argue another ground on appeal. *State v. Breedlove*, 295 Kan. 481, 490, 286 P.3d 1123 (2012). In other words, a discrepancy between the objection at trial and an objection to the evidence's admission on appeal precludes our review of the issue.

5

Defense counsel did not object at trial on K.S.A. 60-455 grounds. To preserve a K.S.A. 60-455 objection for appeal, defense counsel must specify K.S.A. 60-455 as the grounds of objection at trial. See *State v. Cooper*, 252 Kan. 340, 349, 845 P.2d 631 (1993). Typically, this requires citing the statute or explaining at trial what the statute prohibits. See, e.g., *State v. Richmond*, 289 Kan. 419, 425, 212 P.3d 165 (2009) (finding defense counsel preserved a K.S.A. 60-455 argument on appeal by arguing that the testimony was too remote to be relevant to prove his state of mind on the day of the shooting and was being offered as propensity evidence in violation of K.S.A. 60-455).

The transcript shows that defense counsel objected to the evidence of past drug use, stating drug use may constitute a "prior crime." But unlike the defense counsel in *Richmond*, Anthony's counsel did not refer to K.S.A. 60-455 in his objection. Nor did Anthony's counsel argue that the prior crime evidence was being used to prove Anthony's disposition, or propensity, to commit a crime as K.S.A. 60-455 would prohibit. Anthony failed to specifically object based on K.S.A. 60-455.

Because Anthony's counsel failed to specifically object under K.S.A. 60-455, he did not give the district court the opportunity to consider the evidence in light of that statute. And nothing in the record shows that the district court understood that the basis of the objection was K.S.A. 60-455. See *Breedlove*, 295 Kan. at 490.

Nor does Anthony address the preservation issue. She thus fails to explain why she did not raise her argument in the trial court. See Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (litigants who flout Rule 6.02[a][(5) risk a ruling that the issue is improperly briefed); see also *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (requiring strict enforcement of Rule 6.02[a][5]).

For these reasons, we decline to reach the merits of Anthony's unpreserved evidentiary claim or the State's response that this evidence was not K.S.A. 60-455 evidence. See *State v. Molina*, 299 Kan. 651, 658, 325 P.3d 1142 (2014) (finding K.S.A. 60-455 did not apply to evidence that defendant was involved in a gang because it was "not evidence that a particular person committed a particular bad act on a particular occasion").

*Did the District Court Err in Denying Anthony's Motion to Suppress?*

Anthony next contends that the district court erred in denying her motion to suppress. Before trial, Anthony moved to suppress the evidence seized from her car. At the suppression hearing, Anthony argued that Hanika's report cited an inapplicable statute, K.S.A. 8-1706, and suggested that Hanika lacked reasonable suspicion to stop her car. Anthony now argues that because Hanika conceded that he did not witness Anthony commit a traffic violation under K.S.A. 8-1706, his stop was illegal.

The State asserts that because Hanika's stop was objectively supported by reasonable suspicion, it does not matter that Hanika cited K.S.A. 8-1706 rather than K.S.A. 8-1708. In the alternative, the State asks the panel to uphold the district court's decision as right for the wrong reason because circumstances other than the defective brake light gave rise to reasonable suspicion to stop Anthony. We agree with this alternative argument.

Our appellate courts use a bifurcated standard of review when considering the district court's denial of a motion to suppress. First, we review the district court's factual findings for substantial competent evidence. Then we review the district court's ultimate legal conclusions de novo. But when, as here, the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which this court exercises unlimited review. Yet we do

7

not reweigh the evidence or reassess credibility determinations. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). A traffic stop is considered a seizure of the driver of the car. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). To legally perform a traffic stop, a law enforcement officer must have a reasonable suspicion that the particular motorist violated or was about to violate any one of the multitude of applicable traffic regulations of the jurisdiction. See K.S.A. 22-2402(1); *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979).

Reasonable suspicion requires only a minimum level of objective justification for the stop. *State v. Thomas*, 291 Kan. 676, 688, 246 P.3d 678 (2011). Reasonable suspicion is a less demanding standard than the probable cause required for an arrest. *State v. Slater*, 267 Kan. 694, 697, 986 P.2d 1038 (1999) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 [1990]). But the officer must articulate something more than an unparticularized suspicion or hunch. *State v. DeMarco,* 263 Kan. 727, 735, 952 P.2d 1276 (1998) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 [1989]). "In applying this standard, the court should consider the totality of the circumstances and the fact that trained law enforcement officers may make 'inferences and deductions that might well elude an untrained person.'" *State v. Field*, 252 Kan. 657, 660, 847 P.2d 1280 (1993).

The State bears the burden of establishing the reasonableness of the seizure and generally may do so by producing the officer's testimony that he or she observed a driver commit a traffic infraction before initiating the stop. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). This observation and testimony suffices because a traffic infraction provides an objectively valid reason to carry out a traffic stop. 300 Kan. at 637. Yet an

officer need not witness a criminal act or a traffic infraction to make a valid stop. Public safety reasons alone, if based on specific and articulable facts, may justify an officer's investigatory stop. *Field*, 252 Kan. at 660-61.

Here, the State cites circumstances other than the defective brake light to support Hanika's claim that he had reasonable suspicion to make a traffic stop. Hanika testified that he saw the car Anthony was driving weaving within its lane and  traveling between 35 to 50 mph in a 70 mph zone at around 11 p.m. Evidence established that Anthony drove at fluctuating speeds, "drifted from left to right in the right lane," and left her turn signal on much longer than necessary.

The facts available to Hanika warranted a reasonable officer's belief that the driver of that car was impaired or exhausted, sufficient to warrant an initial stop of the car. See *Field*, 252 Kan. at 664 (finding experienced officer had reasonable suspicion based on car weaving within its lane at 2:13 a.m.); *State v. Campbell*, No. 109,109, 2013 WL 6726167, at *3-4 (Kan. App. 2013) (unpublished opinion) (considering swerving with a lane, driving 10 mph below the speed limit, and fluctuating speed as factors in reasonable suspicion analysis). We thus uphold the initial stop as supported by reasonable suspicion. See *State v. Prine*, 297 Kan. 460, 481, 303 P.3d 662 (2013) (affirming judgment as right for the wrong reason).

*Did the State Present Sufficient Evidence to Support Anthony's Convictions?*

Anthony next claims that the State presented insufficient evidence of her possession of methamphetamine and driving with a defective brake light.

*Standard of Review*

When a defendant alleges that the evidence presented at trial could not sustain a conviction, the issue is "whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 (2014). We uphold a guilty verdict except "in rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). A guilty verdict can stem from only circumstantial evidence and any inferences reasonably deduced from it. *State v. Rosa*, 304 Kan. 429, 433, 371 P.3d 915 (2016).

*Sufficient Evidence Supports Anthony's Possession of Methamphetamine Conviction*

Anthony was convicted of possession of methamphetamine under K.S.A. 2016 Supp. 21-5706(a). That statute makes it a crime to possess any "opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1), and amendments thereto, or a controlled substance analog thereof." Methamphetamine is listed in K.S.A. 65-4107(d)(3). Anthony argues that the State did not present evidence that she intentionally or knowingly possessed methamphetamine.

The district court gave this jury instruction about the possession of methamphetamine charge:

"The defendant is charged in count 1 with unlawful possession of a controlled substance. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

10

1. The defendant possessed methamphetamine.
2. That this act occurred on or about the 26th day of March, 2017, in Jackson County, Kansas."

The district court also instructed the jury that the State had to prove Anthony possessed methamphetamine either intentionally or knowingly, defined each of those culpable mental states, and defined possession for each possessory crime charged. Anthony does not claim any instructional error.

To prove possession, the State must show that the defendant either: (1) exercised "joint or exclusive control over [the substance] with knowledge of and intent to have such control" or (2) knowingly kept the substance "in a place where [he or she] has some measure of access and right of control." K.S.A. 2016 Supp. 21-5701(q). Under these circumstances, the State had to show "more than just the defendant's mere presence or access to the drugs." *State v. Keel*, 302 Kan. 560, Syl. ¶ 2, 357 P.3d 251 (2015).

Factors relevant to the possession analysis include:

- whether the defendant has used or sold the substance;
- how close the defendant was to where the drugs were found;
- whether the drugs were in plain view; and
- whether the defendant's behavior around the drugs was suspicious. *Keel*, 302 Kan. 560, Syl. ¶ 2.

None of these factors, by themselves, may be enough to support a conviction, but taken together, they can provide a sufficient inference of knowing possession. *Rosa*, 304 Kan. at 434.

11

The substance that tested positive for methamphetamine was found in a glass pipe inside an eyeglass case in a purse found in the car. Anthony suggests on appeal that the purse was not hers. But at trial, Anthony's defense was that someone put the eyeglass case in her purse without her knowledge. The evidence shows:

- The purse was found on the driver's side of the car that Anthony was driving, in close proximity to her;
- Anthony did not dispute at trial that the purse was hers;
- Body camera footage of the stop showed the purse was in Anthony's lap when Hanika first approached the car, showing the purse was likely hers;
- Anthony admitted to knowing that a jar found in the same purse contained alcohol, which showed Anthony was familiar with the contents of the purse; and
- Anthony told Hanika that she had not used cocaine or methamphetamine "in a while," implying that she had used methamphetamine.

Viewed in the light most favorable to the State, this evidence sufficiently shows Anthony's possession of methamphetamine.

Anthony also argues that only a little methamphetamine was found as residue in the glass pipe. But a conviction for possession of methamphetamine may be based on residue alone. *State v. Allen*, 52 Kan. App. 2d 729, 733, 372 P.3d 432 (2016). We uphold Anthony's conviction of possession of methamphetamine.

*Anthony's Brake Light Conviction Is Not Supported by Sufficient Evidence.*

Anthony also argues that insufficient evidence supports her conviction of having improper brake lights (stop lamps) under K.S.A. 8-1721. She notes that the jury heard no evidence about the color, visibility, or actuation as that statute outlines; rather, the evidence showed only that one of her brake lights was "defective."

12

When read along with K.S.A. 8-1708, K.S.A. 8-1721 provides that every car must have at least two brake lights

> "on the rear of the vehicle which shall display a red or amber light, or any shade of color between red and amber, visible from a distance of not less than three hundred (300) feet to the rear in normal sunlight, and which shall be actuated upon application of the service or foot brake, and which may, but need not, be incorporated with one (1) or more other rear lamps." K.S.A. 8-1721(a).

The jury instruction on the elements of this charge included none of those requirements. Rather, it stated:

> "The defendant is charged in count 4 with operating a car with defective brake lights. The defendant pleads not guilty.
>    1.    "To establish this charge, each of the following claims must be proved:The defendant operated a motor car on a highway with defective brake lights (stop lamps).
>    2.    This act occurred on or about the 26th day of March, 2017 in Jackson County, Kansas."

Anthony contends that the jury could not make an informed decision about this traffic infraction because the State presented no evidence about the specific requirements or elements in K.S.A. 8-1721(a) that it charged her with having violated—color, visibility, or actuation.

To this, the State responds that Hanika's testimony was enough to show that the actuation element was not met. Hanika testified that when Anthony slowed the car and activated its brakes, the passenger side brake light illuminated brighter, but the driver side brake light did not. We agree that this evidence is enough to show that the driver's side brake light did not properly actuate, as required by K.S.A. 8-1721(a).

13

Anthony also contends that by using the plural—"defective brake lights"—the instruction required the State to prove that more than one of her brake lights failed to work properly. Yet Hanika testified only that the brake light on the driver's side was defective:

"[O]nce they slow[ed] down at the intersection . . . they activated their brakes, the passenger side light illuminated brighter, and the driver side light didn't illuminate any brighter. So that indicated to me that the brake light on the driver side was defective."

The State responds that Anthony's car had three brake lights, as shown in the dash camera footage, and that two of the three brake lights did not work properly. The State reasons that Hanika's testimony established that the driver's side brake light was defective and the dash camera footage showed the jury that the center brake light did not work.

But the State did not take this approach at trial. There, the State relied on Hanika's testimony that the driver's side brake light was defective. The State now asks us to review the dash camera footage and conclude that two brake lights were defective, recognizing that if Anthony's car had two working brake lights, she did not violate K.S.A. 8-1721. But the dash camera footage does not readily show what the State suggests, and this court is not in the position to reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. See *Lloyd*, 299 Kan. at 632. Although it appears from that footage that Anthony's car had three brake lights, we cannot say that a jury would necessarily have found that two of those brake lights failed to meet the statutory requirements. As a result, we reverse Anthony's conviction under that statute.

We find it unnecessary to reach Anthony's remaining assertion that the brake light instruction was clearly erroneous.

We reverse Anthony's conviction for the brake light infraction and affirm all other issues.

14